# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TASHA GATEWOOD, | ) | |
| ex. rel. D.P., a minor, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 C 283** |
| | ) | |
| v. | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tasha Gatewood ("Gatewood"), brought this action on behalf of her son, "DP," to remand the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), who denied her claim for Supplemental Security Income ("SSI"). Gatewood now seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Commissioner has filed a cross motion for summary judgment, requesting that this Court affirm his final decision. For the following reasons, Gatewood's motion for summary judgment is granted [dkt. 25] and the Commissioner's motion for summary judgment is denied [dkt. 27].

## PROCEDURAL HISTORY

On July 9, 2007 Gatewood filed an application for SSI payments on behalf of her minor son, DP.[1] She alleged that DP had been disabled due to asthma since January 6, 1997.[2] That claim was initially denied by notice dated August 29, 2007.[3] Gatewood then filed a Request for

---

[1] R. at 13, 51.
[2] R. at 51.
[3] R. at 53.

Reconsideration and the claim was again denied by notice dated October 10, 2007.[4]  On November 15, 2007, Gatewood filed a request for a hearing before an Administrative Law Judge ("ALJ").[5]

On July 9, 2009, a hearing was held before ALJ Joel G. Fina in Orland Park, Illinois.[6]  By the time this hearing occurred, however, Gatewood had submitted additional evidence to establish that DP had a learning disability in addition to the asthma.[7]  Following the hearing, the ALJ issued an unfavorable opinion dated August 21, 2009, finding that DP was not disabled under the Social Security Act.[8]  On November 2, 2009, Gatewood then filed a request for review of the ALJ's determination with the Social Security Administration's Appeals Council.[9]  On November 20, 2009, the Appeals Council denied the request for review, making the ALJ's August 21, 2009 decision the final administrative determination of the Commissioner.[10]  On January 15, 2010, Gatewood filed a complaint, seeking judicial review.[11]

## STATEMENT OF FACTS

DP was fourteen years old at the time the ALJ issued his opinion.  He lived with Gatewood- his mother- and his two brothers. The record consists of school records to demonstrate his learning disability, medical records that document his asthma, an interrogatory by a medical expert who reviewed DP's school and medical records, and the administrative hearing transcript.  We will discuss each of these categories of evidence in turn.

---

[4]R. at 52, 56.
[5]R. at 59-60.
[6]R. at 30-50.
[7]*Id.*
[8]R. at 24-31.
[9]R. at 8-9.
[10]R. at 2-4.
[11]*See* Comp. [dkt 1].

## A. Medical Documents Related to Asthma

DP suffered from asthma since1997, when he was two years of age.[12]   Medical documents, however, date back to only May 2006, when DP was brought to the emergency room reporting symptoms of wheezing and difficulty breathing.[13]  He was transferred to the intensive care unit for further care and was discharged five days later.[14]  Since then he has been treated for asthma on a regular basis by C.W. Chen, M.D. and given medication.[15]

On August 23, 2007, Bala Kanagaraju, M.D. performed a Consultative Examination for the Bureau of Disability Determination Services.[16]  He examined the medical records and performed a thirty minute examination of DP.[17]  At the time of examination, DP was 12 years old and obese.[18] In his report, Dr. Kanagaraju stated that DP was diagnosed with asthma at two years of age, after an emergency room visit.[19]  He stated that DP experienced asthma attacks initially six times per year, but that the attacks had increased to between eight and ten times per year.[20]  He stated that DP is admitted to the hospital due to asthma approximately four to five times per year.[21]  Dr. Kanagaraju noted that DP is seen once a month by a pediatrician to monitor his asthma.[22]   Cold weather, weather changes, playing, pets, and smoke were listed as aggravating factors.[23]   The following

---

[12]R. at 273.
[13]R. at 215-62.
[14]*Id.*
[15]R. at 265-70; 273.
[16]R. at 273-75
[17]R. at 273.
[18]R. at 274.
[19]R. at 273.
[20]*Id.*
[21]*Id.*
[22]*Id.*
[23]*Id.*

medications were listed: Albuterol Spray; Flovent Spray; Albuterol Nebuliser treatment; and Predisone.[24]  No other medical issues were noted.[25]

On August 27, 2007, Virgilio Pilapil, M.D. examined DP's medical records and completed a Childhood Disability Evaluation Form, which is a Social Security Administration form completed by medical consultants to help the Social Security Administration evaluate whether a claimant is disabled.[26]  However, Dr. Pilapil did not personally examine DP.[27]  Dr. Pilapil concluded that DP's asthma was a severe impairment but that it did not meet, medically equal, or functionally equal listings provided in the Social Security Administration Regulations ("Regulations").[28]

The disability evaluation form includes six "Domain Evaluations," where the doctor must assess the claimant's limitations in six categories as either "no limitation," "less than marked," "marked," or "extreme."[29]  In the first domain, "using and acquiring information," Dr. Pilapil marked "no limitation" and noted that, "[t]his 12 year old is in regular ed classes, no problems alleged."[30]  In terms of "attending and completing tasks," Dr. Pilapil again marked "no limitation," noting that, "no problems noted or alleged."[31]  In the domain of "interacting and relating with others," Dr. Pilapil did not indicate DP's limitation, but he noted that DP, "[t]alks with family and friends.  Can communicate wants and needs; talks on the phone.  Gets along with mother and teachers."[32]  Dr. Pilapil marked "no limitation" for the domains of "moving about and manipulating

---

[24]*Id.*
[25]R. at 273-75.
[26]R. at 276-81.
[27]R. at 281.
[28]R. at 276.
[29]R. at 278-79.
[30]R. at 278.
[31]*Id.*
[32]*Id.*

objects" and "caring for yourself."[33]  In the final category, "health and physical well-being," Dr. Pilapil marked, "less than marked."[34]  In this category Dr. Pilapil noted that DP's asthma was controlled with medication.[35]

On October 2, 2007, after Gatewood filed her request for reconsideration, Reynaldo Gotanco, M.D. also completed a Disability Evaluation Form.[36]  Dr. Gotanco's opinion affirmed Dr. Pilapil's opinion, noting that DP's asthma was "well controlled on medication."[37]  It is important to note that at the time Drs. Kanagaraju, Pilapil, and Gotanco provided their opinions, Gatewood had not indicated DP's learning disability as a potential reason for disability benefits.  Therefore, they analyzed DP only in terms of his asthma.

## B. Learning Disability

Gatewood did not raise the issue of DP's learning disability until after the reconsideration was denied.  Nevertheless, evidence of DP's learning disability was presented to the medical expert that completed the medical interrogatories, the medical expert at the administrative hearing, and the ALJ.  This evidence consists of three school records.

On September 17, 2007, DP's fifth grade teacher, Tolana Blackfeel, completed a "Teacher Questionnaire" at the request of the Social Security Administration.[38]  The Teacher Questionnaire asked Ms. Blackfeel to indicate whether DP had problems functioning in the same six domains that

---

[33]R. at 279.
[34]*Id.*
[35]*Id.*
[36]R. at 282-87.
[37]R. at 287.
[38]R. 170-77.

were evaluated in the Childhood Disability Evaluation Form.[39]  First, Ms. Blackfeel reported that DP had problems functioning in the domain of "acquiring and using information."[40]  Within this domain, the form specified ten categories and required Ms. Blackfeel to rate DP's functioning in each of these categories ranging from no problem to a very serious problem.[41]  Of these ten activities, Ms. Blackfeel indicated a slight problem for three of the activities, an obvious problem for six of the activities, and a serious problem for the activity of "expressing ideas in written form."[42]  Second, she also noted that DP had problems functioning in the domain of "attending and completing tasks."[43]  Again, the form required Ms. Blackfeel to rate DP's functional problems in specific activities within this domain.[44]  Of the thirteen activities, Ms. Blackfeel marked no problem for two of the categories, a slight problem for four of the categories, and an obvious problem for six of the activities.[45]  Third, Ms. Blackfeel observed that DP had problems functioning in the domain of "interacting and relating with others."[46]  In the thirteen specific activities within this domain, she marked no problem for four of the activities, a slight problem for seven of the activities, and an obvious problem in "expressing anger appropriately."[47]  Fourth, Ms. Blackfeel also indicated that there were problems functioning in the "caring for himself" domain.[48]  This domain listed ten specific activities, and Ms. Blackfeel opined that DP had no problem in three of the activities, a slight problem in five activities, and an obvious problem in two activities.[49]  Fifth, Ms. Blackfeel

---

[39]R. at 171-76.
[40]R. at 171.
[41]*Id.*
[42]*Id.*
[43]R. at 172.
[44]*Id.*
[45]*Id.*
[46]R. at 173.
[47]*Id.*
[48]R. at 175.
[49]*Id.*

reported no functional problems in the "moving about and manipulating objects domain." [50] Finally, sixth, under the domain "medical conditions and medications/health and physical well-being," Ms. Blackfeel stated that DP, "had many difficult days related to his asthma." [51] She also noted that he frequently missed school due to illness. [52]

DP's sixth grade performance was recorded on a "Teacher Intervention Strategies" form, which his teacher, Mr. E. Jackson completed in October 2007. [53] We note that this from is completed for school purposes, and was not completed for the Social Security Administration. The report noted that DP required intervention in all school subjects and behavior. [54] Specifically, it was observed that DP had difficulty following directions, processed information slowly, had difficulty with math reasoning, was distracted easily and lost focus often, spelled poorly, had trouble putting ideas on paper, had difficulty understanding concepts, had difficulty following multiple verbal requests, and was slow to switch from one task to another. [55] A number of academic interventions were instituted to address these issues. [56] In addition, social work observation was requested to remedy behavioral issues, including his aggressive behavior. [57]

DP continued to struggle in seventh grade. In December 2008, a "Conference Report," another report completed for school purposes only, indicated that he was reading at a third grade level. [58] It also noted that he was below his grade level in math skills. [59] Further, DP's IQ score was

---

[50]R. at 174.
[51]R. at 176.
[52]*Id.*
[53]R. at 202-04.
[54]R. at 202.
[55]*Id.*
[56]R. at 203.
[57]R. at 204.
[58]R. at 201.
[59]*Id.*

in the "low average range."[60]  The document noted that DP was eligible for special education services because of a "specific learning disability."[61]  The document stated that DP, "displays significant weaknesses in the areas of concept formation in written form and math calculation skills."[62]

## C. Medical Interrogatory

A medical expert, Milford Schwartz, M.D., completed a set of interrogatory questions on December 24, 2008.[63]  Dr. Schwartz did not examine DP, but he reviewed all the school and medical records. Dr. Schwartz concluded that DP's asthma did not meet or medically equal any of the requirements in the listings.[64]  When evaluating DP's ability to function in the various domains, he indicated "less than marked" in the domains of "moving about and manipulating objects" and "health and physical well being."[65]  He noted that DP had only one admission into the hospital for asthma within the relevant disability period.[66]  Dr. Schwartz also observed that DP's lungs were clear in between wheezing episodes.[67]

Dr. Schwartz, however, was unable reach a conclusion as to the severity of DP's learning disability, stating, "[t]he allegation of a mental impairment needs to be developed."[68]  Further, Dr. Schwartz failed to reach a conclusion in the domains of "acquiring and using information,"

---

[60]R. at 196.
[61]R. at 199.
[62]*Id.*
[63]R. 288-93.
[64]R. at 289.
[65]R. at 292.
[66]R. at 290.
[67]*Id.*
[68]R. 288.

"attending and completing tasks," "interacting and relating with others," and "caring for yourself," noting that there was insufficient evidence.[69]

## D. Hearing Testimony

At the hearing before ALJ Fina, testimony was taken from Gatewood, DP, and a medical expert, Lawrence James Hagerman, MD.[70]

A fact of particular importance is that Gatewood was not represented by counsel at the administrative hearing. At the beginning of the hearing, the ALJ discussed with Gatewood her right to have an attorney. The following discussion ensued:

> ALJ: .... Now before we go any further, do you understand you have a right to have an attorney here on your behalf?
> WTN: Yes.
> ALJ: Do you wish to proceed today without an attorney?
> WTN: Yes.
> ALJ: Okay. Do we have a waiver?
> HA[71]: Uh-huh.
> ALJ: Please? Can you take a look at that document and review it, and if you have any questions please let me know? We could fill out the top if you want. Just, if you could --
> WTN: Oh, okay.
> ALJ: --sign, if could just sign it. Thank you. Do you have any questions about that form?
> WTN: No.
> ALJ: Okay. Okay. You wish to proceed today without an attorney, is that correct?
> WTN: Yes.
> ALJ: Okay. The record will show that claimant, through his mother, Tasha Gatewood, has agreed to proceed today without the benefit of an attorney....[72]

---

[69]R. at 291-92.
[70]R. at 30-50.
[71]The identity of "HA" is unclear.
[72]R. at 33.

The waiver referred to in that discussion, which Gatewood signed, is a one page document.[73] It verifies that Gatewood is aware that she has a right to an attorney and that she is waiving that right.[74]  Further, the form states,

> I also understand that:
>
>> a representative could help me present my testimony, gather evidence, and make legal arguments about my case;
>>
>> there are some representatives who, after reviewing my case file, might agree to represent me without requiring that I pay any fees unless I get a favorable decision; if I get a favorable decision, the total amount of fees I would have to pay the representative could not be more than 25% of my back benefits or $5,300, whichever is less;
>>
>> there are some representatives from legal services programs who, after reviewing my case file, might agree to represent me without requiring that I pay any fees, even if I get a favorable decision;
>>
>> a representative cannot charge me any fee without the approval of the Administrative Law Judge.[75]

Another two page document, which explains Gatewood's right to counsel more fully, is included in the record and was provided to Gatewood prior to the administrative hearing.[76]

Next, the ALJ questioned DP and Gatewood interchangeably.[77]  DP stated that he was in eighth grade and that his grades were mostly C's.[78]  However, according to Gatewood, his grades were below C's until he  was placed in special education classes.[79] DP could not give a clear answer

---

[73]R. at 93.
[74]*Id.*
[75]*Id.*
[76]R. at 79-80.
[77]R. at 34.
[78]R. at 35.
[79]R. at 35-36.

as to how long he spent in special education classes each day.[80]  But his mother testified that he was pulled out of his regular classes to attend special education classes to address his math and reading skills.[81]  Gatewood said he brings his homework home and completes it each night.[82]

When asked, DP said his attendance was bad.[83]  Gatewood interceded and explained that after getting in a fight, DP had been suspended for five days.[84]  DP testified that the fight occurred with other students while attending an after-school volleyball game.[85]  The police were called, but no charges were filed.[86]  Other than that suspension, according to Gatewood, his attendance was good, stating that he missed approximately three or four days last year.[87]  While Gatewood stated that DP and his brothers sometimes fight, DP testified that they generally get along.[88]

As for his asthma, Gatewood explained that DP takes medication in the morning and at night.[89]  In addition, he uses an inhaler when needed.[90]  Previously, Gatewood noted, DP was on steroids.[91]  However, that remedy is no longer prescribed.[92]  DP testified that he attends gym class with an inhaler and that he plays pick-up basketball games with other children in the park.[93]  According to DP, dust, cotton, and dog fur trigger his asthma.[94]  However, he explained that he is

---

[80]*Id.*
[81]R. at 36.
[82]*Id.*
[83]R. at 35.
[84]*Id.*
[85]R. at 41.
[86]*Id.*
[87]R. at 37.
[88]R. at 40.
[89]R. at 37.
[90]R. at 37, 39.
[91]R. at 39.
[92]*Id.*
[93]R. at 37, 38.
[94]R. at 39.

typically able to participate in a full game of basketball without any trouble.[95]

At the end of the examination, the ALJ asked if there was anything he had not covered that Gatewood would like to address, and she replied, "no."[96]   The ALJ then questioned the medical expert, Dr. Hagerman.[97]

Dr. Hagerman stated that he had examined the medical evidence and concluded that DP had two severe conditions: asthma and learning disabilities involving reading, writing, and mathematics.[98]   According to Dr. Hagerman, DP's impairment did not meet or medically equal the listings in the Regulations.[99]   Dr. Hagerman then discussed the 6 domains and DP's limitations in terms of those domains.   First, Dr. Hagerman concluded that DP had a marked limitation in "acquiring and using information."[100]   His limitations with regard to "attending and completing tasks," "interacting and relating with others," and "health and physical well-being" were less than marked.[101]   In terms of "health and physical well-being," Dr. Hagerman noted that DP had no hospital visits within the last twelve months and that when given his medication appropriately, he is able to, "participate in virtually all activities that he wishes."[102]   Finally, Dr. Hagerman found that DP was not limited in the domains of "moving about and manipulating objects" and "caring for oneself."[103]

---

[95]R. at 38.
[96]R. at 44.
[97]*Id.*
[98]R. at 44-45.
[99]R. at 45.
[100]R. at 46.
[101]R. at 45-47.
[102]R. at 47.
[103]R. at 46-47.

The ALJ then asked Gatewood if she had any questions to ask Dr. Hagerman.[104] Gatewood stated only that DP had been to the doctor recently to obtain new prescriptions and because he was "sick."[105] However, she did not elaborate further.[106] The ALJ asked Dr. Hagerman if any of this further testimony changed his opinion, and Dr. Hagerman replied that it did not.[107] Dr. Hagerman was asked no further questions and, at that point, the administrative hearing concluded.[108]

## SOCIAL SECURITY REGULATIONS

When seeking SSI on behalf of a child, the claimant must demonstrate that the minor child is disabled as defined by the Social Security Act and corresponding Regulations. The Regulations require a sequential three-step analysis to determine whether a child is disabled.[109] First, the ALJ must determine if the claimant is engaged in substantial gainful activity.[110] If the claimant is engaged in substantial gainful activity, then he is deemed not disabled.[111] If the claimant is not engaged in substantial gainful activity, then the ALJ moves to the second step of the analysis, which requires a determination as to whether the claimant has a medically determinable severe impairment or a combination of impairments that can be deemed severe.[112] If the claimant does not have a severe impairment, then he is not disabled.[113] If his impairment is severe, then the ALJ moves to the third step of the analysis, which requires the ALJ to determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing

---

[104]R. at 47.
[105]*Id.*
[106]*Id.*
[107]R. at 48.
[108]R. at 47-49.
[109]20 C.F.R. § 416.924.
[110]20 C.F.R. § 416.924(b).
[111]*Id.*
[112]20 C.F.R. § 416.924(c).
[113]*Id.*

in the Regulations, or that functionally equals the listings in the Regulations.[114]  If so, the claimant is deemed disabled.[115]  If not, the claimant is not disabled.[116]

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ analyzes the claimant's functioning in terms of six domains.[117]  These six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.[118]  To be deemed functionally equivalent, the claimant's impairment must result in a marked limitation in two of the domains or an extreme limitation in one domain.[119]  A marked limitation is an impairment that seriously interferes with the claimant's "ability to independently initiate, sustain or complete activities."[120]  "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'"[121]  An extreme limitation is an "impairment [that] interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."[122]

## ALJ'S DECISION

In his August 21, 2009 decision, ALJ Fina used the three step sequential analysis and determined that DP was not disabled within the meaning of the Social Security Act.[123]  At step one, the ALJ found that DP had not engaged in any gainful activity that would disqualify his eligibility

---

[114]20 C.F.R. § 416.924(d).
[115]20 C.F.R. § 416.924(d)(1).
[116]Id.
[117]20 C.F.R. § 416.926a.
[118]20 C.F.R. §§ 416.926a(b)(1)(i)-(vi).
[119]20 C.F.R. §§ 416.926a(d).
[120]20 C.F.R. § 416.926a(e)(2)(i).
[121]Id.
[122]20 C.F.R. § 416.926a(e)(3)(i).
[123]R. at 13-26.

for benefits.[124]  Moving to step two, the ALJ found that DP's specific learning disability and asthma were severe impairments because they caused more than a minimal limitation in his ability to function.[125]  At step three, the ALJ concluded that DP did not have an impairment or combination of impairments that met or medically equaled the requirements of the listings found in the Regulations.[126]  In reaching this conclusion, the ALJ stated that he agreed with the "well reasoned, well supported" opinions of the two medical consultants and two medical experts.[127]

The ALJ also determined that DP did not have an impairment or combination of impairments that functionally equaled the listings.[128]  In making this finding, the ALJ examined each of the six domains and made a finding regarding DP's limitations.[129]  First, he found that DP had a marked limitation in "acquiring and using information."[130]  "Acquiring and using information" is defined as how well the claimant acquires or learns information and how well that information is used.[131] For an adolescent between the ages of 12 and 18, such as DP, the claimant "should continue to demonstrate what [he has] learned in academic assignments (e.g., composition, classroom discussion and laboratory experiments)."[132]  Further, the claimant should have the ability to use the information learned independently in daily living situations, such as using the library or public transportation.[133] The claimant "should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations

---

[124]R. at 16.
[125]R. at 16-17.
[126]R. at 17-18; *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.
[127]R. at 18.
[128]*Id.*
[129]R. at 18-25.
[130]R. at 20-21.
[131]20 C.F.R. § 416.926a(g).
[132]20 C.F.R. § 416.926a(g)(2)(v).
[133]*Id.*

(e.g., to obtain and convey information and ideas)."[134]  Finally, the claimant should also learn to apply these skills in a practical manner to help him enter the workplace.[135]  The ALJ noted that school records confirmed that DP was diagnosed with a learning disability and that he was struggling academically.[136]

Second, the ALJ found that DP had less than a marked limitation in "attending and completing tasks."[137]  The Regulations define "attending and completing tasks" as how well the claimant is able to focus and maintain his attention, and begin, carry through, and finish activities.[138]  This includes the pace at which the claimant is able to complete activities and ease with which he changes them.[139]  Adolescents "should be able to pay attention to increasingly longer presentations and discussions, maintain [their] concentration while reading textbooks, and independently plan and complete long-range academic projects."[140]  The claimant should be able to organize his materials and plan sufficient time to complete school assignments.[141]  An adolescent should also be able to maintain his attention on a task for prolonged periods, "and not be unduly distracted by [his] peers or unduly distracting to them in a school or work setting."[142]  The ALJ stated that prior to DP attending special education classes, his school records noted that he had difficulty with attention and completing tasks.[143]  However, the ALJ observed that recent school records did not record this

---

[134]*Id.*
[135]*Id.*
[136]R. at 21.
[137]R. at 21-22.
[138]20 C.F.R. § 416.926a(h).
[139]*Id.*
[140]20 C.F.R. § 416.926a(h)(2)(v).
[141]*Id.*
[142]*Id.*
[143]R. at 22.

problem.[144] The ALJ also found it persuasive that Gatewood did not state that DP struggled in this area.[145]

Third, the ALJ found that DP had less than a marked limitation in "interacting and relating with others."[146] "Interacting and relating with others" is defined as how well the claimant initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.[147] By adolescence, a child should be able initiate and begin friendships with children of the same age.[148] He should also be able to solve conflicts with peers, family members, and other adults.[149] An adolescent "should recognize that there are different social rules" for his friends than compared with adults.[150] Also, he should be able to intelligibly express [his] feelings, ask for assistance in getting [his] needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers)."[151] The ALJ referred to the fight that led to DP's five day suspension and Ms. Blackfeel's remarks that he displayed aggressive behavior.[152] The ALJ was convinced, however, by recent school records that did not demonstrate difficulty in social functioning.[153]

Fourth, the ALJ found that DP had no limitation in "moving about and manipulating

---

[144]Id.
[145]Id.
[146]R. at 22-23.
[147]20 C.F.R. § 416.926a(i).
[148]20 C.F.R. § 416.926a(i)(2)(v).
[149]Id.
[150]Id.
[151]Id.
[152]R. at 23.
[153]Id.

objects."[154]  In the domain of "moving about and manipulating objects," the ALJ analyzes the claimant's gross and fine motor skills.[155]  In other words, how well the claimant is able to move his or her body from one place to another.[156]  Adolescents "should be able to use...motor skills freely and easily to get about...school, the neighborhood, and the community."[157]  An adolescent should also have the ability to engage in a full range of physical fitness activities.[158]  The ALJ noted that DP is capable of participating in basketball games and that two physical examinations were entirely normal.[159]

Fifth, the ALJ found no limitation in the domain of "caring for yourself."[160]  "Caring for yourself" is defined as the ability to "maintain a healthy emotional and physical state."[161]  An adolescent, like DP, should be increasingly independent in daily activities.[162]  The claimant should begin discovering appropriate ways to express his or her feelings and should also begin thinking about the future and his or her plans following the completion of school.[163]  The ALJ stated that there was no allegation or evidence that DP was incapable of caring for himself.[164]

Finally, sixth, a less than marked limitation was found with regard to "health and physical well being."[165]  In the domain of "health and physical well-being" the ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on

---

[154]R. at 23.
[155]20 C.F.R. § 416.926a(j).
[156]*Id.*
[157]20 C.F.R. § 416.926a(j)(2)(v).
[158]*Id.*
[159]R. at 23.
[160]R. at 24.
[161]20 C.F.R. § 416.926a(k).
[162]20 C.F.R. § 416.926a(k)(2)(v).
[163]*Id.*
[164]R. at 24.
[165]R. at 24-25.

[the claimant's] functioning."[166]  The ALJ wrote that while DP has asthma,  Dr.  Hagerman opined

that it was well controlled with medication and that no emergency room visits or hospitalizations

were required in the last year.[167]

Because only one marked limitation was found and no extreme limitations were found, the

ALJ concluded that DP did not have an impairment that functionally equaled the listings and,

therefore, found him not disabled within the meaning of the Social Security Act.[168]

## STANDARD OF REVIEW

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual

determinations are entitled to deference.[169]  The District Court will uphold the ALJ's decision if

"substantial evidence" supports the findings of the decision and if the findings are free from legal

error.[170]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[171]  Where reasonable minds differ, it is for the ALJ, not this

Court, to make the ultimate finding as to disability.[172]  That is, we "cannot reconsider facts, reweigh

the evidence, decide questions of credibility, or otherwise substitute our judgment for that of the

ALJ."[173]  However, the ALJ must make an accurate and logical connection from the evidence to the

ultimate conclusion.[174]

---

[166]20 C.F.R. § 416.926a(l).
[167]R. at 25.
[168]*Id.*
[169]*Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[170]42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F. 3d 936, 940 (7th Cir. 2002).
[171]*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).
[172]*Cass v. Shalala*, 8 F. 3d 552, 555 (7th Cir. 1993).
[173]*Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000).
[174]*Dixon v. Massanori*, 270 F. 3d 1171, 1176 (7th Cir. 2001).

# ANALYSIS

Gatewood alleges that the ALJ failed to sufficiently develop the record and that he concluded DP was ineligible for benefits based on insufficient evidence. Also, Gatewood contends that the ALJ failed to properly inform her of her right to an attorney at the administrative hearing. The Seventh Circuit has articulated specific requirements an ALJ must follow to ensure a valid waiver of counsel, but even if those requirements are not met, remand is inappropriate unless the ALJ also failed to fully and fairly develop the record.[175] So we must first determine whether Gatewood validly waived her right to an attorney at the administrative hearing. With that determination made, we can then analyze whether the record was fully and fairly developed.

## A. Waiver of Attorney

Gatewood argues that the ALJ failed to discuss with her the three elements of a right to an attorney that the Seventh Circuit requires and, therefore, her waiver of this right was invalid. Claimants have a statutory right to counsel at disability administrative hearings.[176] However, after being properly informed of the right, claimants are permitted to waive it.[177] To inform a claimant of his or her right to counsel, the ALJ must explain to the claimant (1) the benefits of having an attorney, (2) the possibility of obtaining an attorney free of charge or in the alternative on a contingency fee basis, and (3) that attorney fees cannot exceed twenty-five percent of past due benefits and must be approved by the ALJ.[178] If the claimant's waiver of counsel is invalid, then the burden of proof shifts to the Commissioner to show the ALJ adequately developed the record.[179]

---

[175]*Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).
[176]42 U.S.C. § 406; 20 C.F.R. §§ 404.1700, 416.1500.
[177] *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991).
[178]*Thompson,* 933 F.2d at 584.
[179]*Binion*, 13 F.3d at 245.

The hearing testimony regarding Gatewood's right to an attorney, which is transcribed *supra,* does not contain those three elements that must be explained to all *pro se* litigants. Instead, the ALJ informed Gatewood only of her right to an attorney and asked if she had any questions. But as noted by the Commissioner, the required information is contained on the waiver form that Gatewood signed, and on the other form provided to Gatewood prior to the hearing. We must determine, then, whether the ALJ must actually discuss the three elements with the Claimant or whether a document, with the three elements explained, is sufficient to inform a *pro se* claimant of his or her right to counsel.

The Seventh Circuit has not directly addressed whether a claimant's receipt of written materials that sets forth the necessary elements is sufficient to establish a claimant's knowing waiver.[180] A district court has concluded, however, that "mailing written notices to plaintiff could satisfy the commissioner's burden, but only if the ALJ establishes at the hearing that the claimant received, read and understood the notices."[181]

Here, the ALJ provided Gatewood with a form that outlines the necessary elements. He then asked Gatewood to review that form and ask any questions that she might have. Where the claimant is of limited education, suffers from a mental illness, or demonstrates confusion about the right to counsel, then a more in-depth explanation may be warranted.[182] But in this case, there is no allegation that Gatewood was not capable of reading and understanding the waiver form provided

---

[180]*See Seamon v. Barnhart,* 2005 WL 1801406, at *10 (W.D. Wis. Jul 29, 2005) (noting that the Seventh Circuit has not decided whether a claimant's receipt of written materials explaining the three elements is sufficient).

[181]*Seamon*, 2005 WL 1801406, at *10.

[182]*Smith v. Secretary of Health, Ed. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)(stating that "[w]here, as here, the record discloses possible mental illness coupled with a misconception as to the role of a lawyer, the ALJ should have, at the very least, explained these interrelated subjects in greater detail and with greater care."); *see also Vance v. Heckler,* 579 F.Supp. 318, 321 (D.C. Ill. Feb. 16, 1984).

at the hearing.  We see no practical reason why Gatewood would be anymore informed of her right

if the ALJ read this form to her as opposed to Gatewood reading it herself.  Therefore, we conclude

that Gatewood's waiver of counsel is valid.

## B. Duty to Develop the Record

Regardless of whether Gatewood waived her right to counsel, she contends that there was

insufficient evidence in the record regarding DP's learning disability and that the ALJ should have

developed the evidence further.  Specifically, Gatewood argues that the ALJ failed to order a mental

health evaluation.  She also contends that the administrative hearing was too short, lasting only

nineteen minutes, and that the ALJ did not adequately question the medical expert, Gatewood, and

DP.  The Commissioner, however, points to DP's school records, the two consultant opinions, and

two medical experts' conclusions and argues that this was sufficient evidence for the ALJ to reach

his decision.

In an administrative disability hearing an ALJ always has a duty to fully and fairly develop

the record.[183]  When the claimant is not represented by counsel, the ALJ's duty  is "enhanced."[184]

This enhanced duty requires the ALJ "to scrupulously and conscientiously probe into, inquire of,

and explore for all the relevant facts."[185]  While the *pro se* claimant must support his or her claim

with medical evidence, "the ALJ is required to supplement the record, as necessary, by asking

detailed questions, ordering additional examinations, and contacting treating physicians and medical

sources to request additional records and information."[186]  Generally, however, we will respect the

---

[183]*Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997)
[184]*Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).
[185]*Nelms,* 553 F.3d at 1098 (quoting *Thompson*, 933 F.2d at 585-86).
[186]*Id.*; *see also*  20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3).

reasoned judgment of the ALJ in determining how much evidence to gather.[187]  Therefore, we will find that the ALJ failed to fulfil his duty to develop the record only when the claimant puts forth specific, relevant facts that the ALJ failed to consider.[188]  Because we conclude that Gatewood validly waived her right to counsel, Gatewood carries the burden to show that the ALJ did not fully and fairly develop the record.[189]

Here, we simply do not see the "scrupulous" and "conscientious" probing of the evidence that is required when a claimant is *pro se*.[190]  Only the medical expert that appeared at the administrative hearing, Dr. Hagerman, and the medical expert that responded to the interrogatories, Dr. Schwartz, were presented with evidence of DP's learning disability.  Neither of these doctors actually examined DP.  Furthermore, we think Dr. Schwartz highlighted a "significant gap"[191] in the record when he stated that there was insufficient evidence for him to reach conclusions regarding the domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "caring for yourself."[192]  All of these domains potentially relate to DP's learning disability.[193]  Additionally, Dr. Schwartz specifically stated, "[t]he allegation of a mental impairment needs to be developed."[194]

---

[187]*Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).
[188]*Nelms*, 553 F.3d at 1098; *see also Binion* 13 F.3d at 245 (stating that, "[p]rejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant."); *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (finding that a claimant did not receive a fair and adequate hearing because of significant gaps in the administrative record).
[189]*See Binion*, 13 F.3d at 245.
[190]*Nelms*, 553 F.3d at 1098.
[191]*Echevarria*, 685 F.2d at 755 (finding significant gaps in the record where the ALJ failed to explore the claimant's subjective symptoms, improperly rejected the treating physicians opinions, and failed to find out whether past employment was made possible only by special accommodation that future employers would not match).
[192]R. at 291-92.
[193]*See* 20 CFR §§ 416.926a(g), (h), (i), (k).
[194]R. at 288.

The Commissioner argues, however, that the ALJ explicitly adopted the conclusions of Dr. Hagerman and that is sufficient. The ALJ's reason was that Dr. Hagerman was the only physician to examine all of the medical records and observe DP and Gatewood at the hearing. While this is true, we do not think observing DP and Gatewood unrepresented by counsel at a brief administrative hearing is the "development" that Dr. Schwartz was suggesting or that is required by the Regulations.[195]

Given the limited evidence available, Gatewood argues that the ALJ should have ordered a mental health evaluation. "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision."[196] Additionally, a consultative examination is used to resolve conflicts and ambiguities, and to obtain needed medical evidence not contained in the record.[197]

Here, in addition to no medical professionals examining DP with regard to his learning disability, Dr. Schwartz and Dr. Hagerman disagreed about whether there was sufficient evidence to determine DP's functional limitations in several domains. With only two nonexamining doctor's opinions - conflicting on this point - it would seem that a consultative examination is necessary to resolve this conflict and to provide needed medical evidence regarding DP's learning disability.[198]

Next, Gatewood contends that the questioning of Dr. Hagerman was insufficient.[199] We

---

[195] 20 CFR § 416.913 (stating that evidence, "must be complete and detailed enough to allow us to make a determination or decision about whether you are disabled or blind"); *see also* 20 CFR § 416.927 (stating that, "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions").

[196] 20 C.F.R. § 416.919a(b).

[197] 20 C.F.R. § 416.919a(a)(2); *see also* 20 CFR § 416.917.

[198] *see* 20 C.F.R. § 416.919a(a)(2).

[199] R. at 44-47.

agree. The ALJ merely asked Dr. Hagerman to opine regarding the six functional domains. He did, in fact, provide his opinion but gave limited explanation or reasoning for his conclusions. As Gatewood notes, Social Security Ruling 09-1p requires the ALJ to consider the "whole child."[200] This means determining what activities the child is able to perform, what activities the child is not able to perform, which of the child's activities are limited or restricted, whether the child has difficulty independently completing activities, the kind of help and how much help the child needs, and what type of structured support setting the child requires.[201]

When Dr. Hagerman testified, however, the ALJ did not present any of these questions. The standard that requires the ALJ to scrupulously and conscientiously probe the evidence must require more than asking the medical expert his conclusions regarding the six functional domains, with nothing more. If the ALJ fleshes out more detailed answers from the medical expert, this may invite the unrepresented claimant to provide further testimony and encourage a discussion among all those involved. We note that, "Social Security proceedings are inquisitorial, not adversarial, so the ALJ has a duty to develop arguments both for and against granting benefits."[202]

As a final point, we find that the ALJ's questioning of DP and Gatewood with regard to DP's learning disability was also too limited. The ALJ asked DP and Gatewood only simple, non-probing questions, such as what his grades were, how long he spent in special education classes, and whether or not he did his homework. The ALJ failed to pose questions that would provide deeper prospective into DP's learning disability. For example, the ALJ did not ask DP or Gatewood how

---

[200]Social Security Ruling 09-1p at *2.
[201]*Id.*
[202]*Thomas v. Astrue*, 10 C 2634, 2011 WL 382870, at *11 (Feb. 1, 2011) (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)).

long it takes him to complete his homework, a question that would directly reflect upon the domain of "attending and completing tasks."[203]  Furthermore, although the ALJ inquired about the fight DP was involved in and asked if DP gets along with his brothers, the ALJ did not pose any questions about DP's ability to make and maintain friendships.   Such a question would shed further light on DP's functioning in the domain of "interacting and relating with others."[204]  These are subjects that the school records suggest DP had trouble with, and without a more developed understanding of these issues, we fail to see the "substantial evidence" that supports the ALJ's conclusion.[205]  Accordingly, we find it necessary to remand this case for a consultative examination regarding DP's learning disability and further probing testimony from DP, Gatewood, and the medical expert.

---

[203]20 C.F.R. § 416.926a(h)(defining attending and completing tasks as "the pace at which you perform activities and the ease with which you change them.").

[204]*See* 20 C.F.R. § 416.926a(i).

[205]*Steele*, 290 F. 3d at 940.

## CONCLUSION

For the reasons explained above, Gatewood's motion for summary judgment is granted [dkt. 25], and the Commissioner's motion for summary judgment is denied [dkt. 27]. We, therefore, remand the case to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

**ENTERED:** <u>**March 14, 2011**</u>            _____

                                    **UNITED STATES MAGISTRATE JUDGE**

                                    **Susan E. Cox**